# IN THE COURT OF APPEALS OF IOWA

―――――――――

No. 25-2201
Filed April 29, 2026

―――――――――

**In the Interest of I.L., Minor Child,**

**F.M., Mother,**
Appellant.

―――――――――

Appeal from the Iowa District Court for Polk County,
The Honorable Rachael E. Seymour, Judge.

―――――――――

**AFFIRMED**

―――――――――

Sandra C. Johnson of Cunningham & Kelso, P.L.L.C., Urbandale, attorney
for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Angela Bohnenkamp of Youth Law Center, Des Moines, attorney and
guardian ad litem for minor child.

―――――――――

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A mother appeals the juvenile court's order terminating her parental rights to her now-one-year-old daughter.[1] She challenges the statutory grounds for termination and argues that termination is not in the daughter's best interest. But on our de novo review, we agree with the juvenile court that the State proved a ground for termination under Iowa Code section 232.116(1)(h) (2025) and that termination is in the daughter's best interest. We thus affirm the juvenile court's termination order.

## I.      Background Facts and Proceedings

The daughter came to the attention of the Iowa Department of Health and Human Services ("HHS") when she tested positive for amphetamine and cocaine at birth in January 2025. When a child protective worker visited the mother at the hospital, the mother "became verbally aggressive and kicked a tray table while holding the child." The mother also admitted "that she had 'used' prior to finding out she was pregnant." Based on that information, the juvenile court entered a temporary removal order when the daughter was two days old. The State filed a child-in-need-of-assistance ("CINA") petition three days later. And HHS placed the daughter in relative care with the adoptive mother of her older half-sibling.[2]

---

[1] The juvenile court also terminated the father's parental rights. He does not appeal. We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's orders—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

[2] The mother's parental rights to that older child—who tested positive for THC and cocaine at birth—were terminated in 2023 due to the mother's "substance use and mental health concerns."

At the time of the removal hearing in late January, the mother was on probation in Polk County and had another pending criminal case in Warren County. Indeed, the mother was arrested and taken to the Warren County Jail at the end of the removal hearing. The juvenile court confirmed the daughter's removal and "encouraged [the] parents [to] initiate services to address their long-standing substance abuse issues."

In February, while the mother was still in jail, the court adjudicated the daughter as a child in need of assistance. The mother completed a mental-health and substance-abuse evaluation that month which diagnosed her with stimulant-use disorder, amphetamine-type substance, severe; cannabis-use disorder, severe, in early or sustained remission; and posttraumatic stress disorder. The evaluation also recommended residential treatment. The mother did not comply with HHS's request to provide a drug screen the next month, but she "reported she would be starting the process to get into inpatient" treatment.

The court continued the daughter's out-of-home placement after the dispositional hearing in late March. At that time, the court encouraged the mother to complete required medical testing so she could start inpatient treatment and directed her to "comply with all criminal court expectations" in her ongoing criminal cases. The court also noted that the mother had participated in visits with the daughter and was attending outpatient mental-health therapy, but she was "not currently engaged in substance abuse services," and her missed drug screen was "considered positive."

The mother did not engage in services, complete requested drug screens, or respond to any of the HHS case worker's attempts to schedule visits with the daughter over the next four months. And she failed to appear for the scheduled permanency hearing at the end of July. The court

continued that hearing after granting the mother's counsel's motion to withdraw and appointing new counsel. Then, in August, the State petitioned to terminate her parental rights.

The court held a combined permanency and termination hearing in September. The mother again failed to appear. The court heard testimony from the HHS case worker and a Family-Centered Services ("FCS") worker who supervised the mother's most recent visits with the daughter.

The HHS case worker recommended termination because the mother, "unfortunately, has not addressed the reason why HHS became involved originally. She has struggled to maintain contact with the Department to demonstrate . . . sobriety and has failed to address her mental health as well." The case worker testified that the mother had not engaged in substance-use treatment or complied with HHS's requests for drug screens throughout the CINA proceedings,[3] that the mother had a "history of domestic violence" and "making threats toward people," and that the mother "struggles to understand the reasoning behind the Department's recommendations." She also testified that the mother had not consistently attended visits with the daughter. And to the case worker's knowledge, the mother was homeless at the time of the hearing.

The FCS worker testified that the mother missed "about three visits" with the daughter the month before the hearing. When the mother attended visits, she would "on occasion" bring clothes, baby formula, and a suction device to clean the daughter's nose. And the mother would hold the daughter and talk to her. But she would often ask how much time was left and try to

---

[3] The mother's probation officer told the HHS case worker that the mother tested "positive for methamphetamine and denied use" at the end of July.

leave the visits early. The worker was concerned that the mother "appeared to have trouble putting [the daughter] into the car seat at the end of a visit" and that "she was continually trying to bounce [the daughter], put a bottle in her mouth, change her diaper. It wasn't like she could just be content with her." The worker also testified that the mother sometimes "lashes out" and "does not emotionally regulate herself." And the worker "believed [the mother] was under the influence of mood-altering substances" during two visits with the daughter—including on the day before the hearing.

At the end of the hearing, both the State and the daughter's guardian ad litem recommended terminating the mother's parental rights. The guardian ad litem highlighted that the daughter "has been with [her] current placement for the entirety of her life since she was sent home from the hospital, and she is in a safe place with her sibling. . . . She's vulnerable, less than a year old, and she cannot self-report." So, in her view, the daughter's "current placement is the best option for her." The mother's counsel acknowledged that the mother was "still struggling" but urged that she had "tried to make attempts to address the things that we've discussed here today." So the mother's counsel requested "that the Court give her more time to work on those things."

The juvenile court denied the mother's request for more time to work toward reunification and terminated her parental rights under paragraphs "e," "g," and "h" of Iowa Code section 232.116(1). The court concluded that termination was in the daughter's best interest and no legal exception applied "which would argue against termination." The mother now appeals.

## II.    Statutory Grounds for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the

State must prove a statutory ground for termination. *Id.* Second, the State must show that termination is in the best interest of the child. *Id.* And third, the parent bears the burden to show whether a permissive exception applies that should preclude termination. *Id.*; *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). We need not address any step not challenged by a parent. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The juvenile court terminated the mother's parental rights under paragraphs "e," "g," and "h" of Iowa Code section 232.116(1). The mother challenges all three statutory grounds. But when the court terminates parental rights on more than one ground, we may affirm on any ground we find supported by clear and convincing evidence. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). So we focus on paragraph "h." The court may terminate parental rights under that paragraph if:

> (1) The child is three years of age or younger.
>
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

On our review, we agree with the juvenile court that the State proved this ground by clear and convincing evidence. The daughter was less than one year old at the time of the termination hearing. She had been adjudicated a child in need of assistance. She had been removed from the mother's custody for over eight months with no trial periods at home. And she could not be safely returned to the mother's custody due to the mother's unresolved substance-use and mental-health issues. *See A.S.*, 906 N.W.2d at 473; *see also A.B.*, 815 N.W.2d at 776 ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *In re S.C.*, No. 15-0262, 2015 WL 2089743, at *2–3 (Iowa Ct. App. May 6, 2015) ("A child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance.").

## III.    The Daughter's Best Interest

The mother next challenges the juvenile court's finding that termination is in the daughter's best interest.[4] She contends that termination

---

[4] The mother also briefly mentions that the court should have applied "the statutory exceptions" or granted a six-month extension as part of her claim that termination is not in the daughter's best interest without stating these as separate issues for appeal or offering any case-specific argument as to why she believes the court erred. Indeed, it is not clear which permissive statutory exception the mother seeks to apply, and no exception was urged by the mother in the juvenile court. To the extent the mother intended to raise these issues on appeal, they are not properly presented for our review. *See In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025) (en banc) (holding statutory-exception issue was not preserved when not urged in the juvenile court); *In re G.A.*, No. 24-1574, 2024 WL 5153371, at *1 (Iowa Ct. App. Dec. 18, 2024) (holding that issues mentioned on appeal were waived when parent made "no substantive arguments applying the relevant legal principles to the facts of this case to explain why he believes he is entitled to relief").

"would harm the [daughter] by disrupting a uniquely positive bond and relationship." And she insists that the daughter's "best interests are better served by allowing the mother additional time to show her ability to stay sober, continue to stay engaged with individual therapy, make progress toward reunification, and preserve the strong bond she shares with her child."

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the child's long-range and immediate best interest. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

As the juvenile court found, "the safety concerns that led to [the daughter's] removal continue to exist today." Besides her brief participation in outpatient therapy early on in this case, the mother has not meaningfully engaged in services to address her mental-health issues. Nor has she cooperated with HHS's requests for random drug screens or engaged in any recommended substance-use treatment. She appeared to be "under the influence of mood-altering substances" during two recent supervised visits with the daughter. Her threatening behavior towards case workers is troubling. And she lacked stable housing as of the termination hearing.

Meanwhile, the daughter has been in a safe and stable placement with the adoptive mother of her older half-sibling since she was a few days old. She is thriving in that home. And her current placement plans to adopt her.

Given the mother's lack of progress when offered reunification services, we see no prospect in the foreseeable future that she could become a safe and nurturing caregiver for the daughter. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000) ("The future can be gleaned from evidence of the [mother's] past performance and motivations."). And "we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted). So we agree with the juvenile court that termination of the mother's parental rights is in the daughter's best interest.

**AFFIRMED.**